## HOOKS v. ORTON.
### No. 1994.

Court of Civil Appeals of Texas. Beaumont.
July 17, 1930.

682

King, Wood & Morrow, of Houston, for appellant.

A. T. Russell, of Nacogdoches, for appellee.

## WALKER, J.

The following statement of the nature and result of this suit is taken from appellant's brief:

"The appellee, W. T. Orton, instituted this suit in the County Court of Nacogdoches County, Texas, against T. M. Hooks, Tommie G. Hooks and Riley Castleberry, alleging that on the 7th day of January, 1929, he was the owner of a certain building in the City of Nacogdoches; that on said date T. M. Hooks and Tommie G. Hooks owned a certain automobile, which was being operated upon the streets of the City of Nacogdoches by Tommie G. Hooks and Riley Castleberry; that Riley Castleberry was a passenger and a guest of the said Tommie G. Hooks, and was driving the car at her request, and that while so operating said automobile the same was caused by the negligence of the said Tommie G. Hooks and Riley Castleberry to be run into the appellee's building, demolishing the same,

to his damage in the sum of $950.00. The appellee further plead in the alternative that if the facts should show that the automobile belonged to T. M. Hooks, then that the same was in possession of Tommie G. Hooks, as the agent of T. M. Hooks. As grounds of negligence on the part of Riley Castleberry, the appellee alleged that at the time of the collision Riley Castleberry was under the influence of intoxicating liquor, and as grounds of negligence on the part of Tommie G. Hooks the appellee alleged that she was endeavoring to take or wrest the steering wheel from Riley Castleberry at the time of the accident. The appellee sought recovery as against all the defendants in the sum of $950.00.

"The defendants, T. M. Hooks and Tommie G. Hooks, filed a general demurrer, a general denial, a plea of unavoidable accident, and a plea that the sole proximate cause of the collision of the automobile with the appellee's building was the negligence of the driver of a Chevrolet automobile, which was approaching the defendants' automobile from the west at a high rate of speed, and which forced defendants' automobile into the north curb of the street, causing the driver to lose control thereof. Defendants below, T. M. Hooks and Tommie G. Hooks, further filed a cross action against their co-defendant, Riley Castleberry, asking that they have judgment over and against him in event any judgment was rendered against them.

"The defendant, Riley Castleberry, answered by a general demurrer and general denial.

"At the close of the evidence, no issue having been made with regard to any liability of T. M. Hooks, the jury was instructed to return a verdict in his favor, which was done.

"The motion of the appellant, Tommie G. Hooks, for an instructed verdict was refused, and the case was submitted to the jury upon five special issues, the first asking if Tommie G. Hooks was negligent in taking hold of the steering wheel, if she did; the second asking if this was the proximate cause of the wrecking of the appellee's building; the third asking if the defendant, Riley Castleberry, was negligent in permitting the automobile to be driven into the building; the fourth asking if this was a proximate cause of the damage to the appellee's building, and the fifth asking what amount of money would compensate the appellee for his damages.

"No other theory of liability upon the part of Tommie G. Hooks, other than her alleged negligent act in taking hold of the steering wheel, was submitted to the jury or requested by the appellee, the appellee waiving any other ground of liability, whether on the theory of agency, or otherwise, that may have been raised by his pleadings or the evidence. The jury in their answers to the issues submitted

found that the appellant was negligent in taking hold of the steering wheel; that this was the proximate cause of the damage to appellee's building; that Riley Castleberry was not negligent, and that the appellee's damage was the sum of $800.00.

"The appellant requested the submission of issues to the jury covering the theory of unavoidable accident and sole proximate cause plead by her, and also an issue as to whether the appellant's act in grabbing the steering wheel was the result of sudden panic, all of which issues were refused.

"Though appellant moved the court to enter judgment in her favor on the verdict of the jury, such motion was overruled, and judgment was entered in favor of appellee and against appellant in the sum of $800.00, with interest and costs, and that the defendant, Riley Castleberry, go hence without day. Appellant thereafter filed her motion for new trial which was by the court overruled, to which action of the court appellant duly excepted and appellant thereafter, and within the time provided by law, filed her supersedeas bond, and this cause is now properly before this Honorable Court for review."

When the accident occurred, appellant, C. A. Menefee, and Riley Castleberry were riding on the front seat of appellant's car with Castleberry driving. The following excerpts from the testimony of the witnesses Menefee and Castleberry explain how the accident occurred and present the issues upon which appellant relies for reversal of the judgment against her.

The witness C. A. Menefee testified, in part:

"As to how the accident occurred, I will say that we were going down West Main Street and on this side of the creek, we met a Chevrolet car—it was coming around the curve pretty fast—faster than the automobile we were riding in. It pushed us on the curb. When it pushed us on the curb, he (Riley Castleberry) lost control of the car. He never got back in the road until we hit the building."

And further:

"Our car jumped up on the curb—on our right. He (Riley) then lost control of the car. It struck the banister of the bridge. We kept going right into the building—I don't know whether we ever got back in the road or not. We hit the second building."

And further:

"The accident occurred something after eleven o'clock. At the time of the accident, Mr. Castleberry was driving. Miss Hooks was sitting in the middle. I was sitting on the other side. I don't know how long Mr. Castleberry had been driving when the accident occurred."

And further:

"I stated as we were going around the curb, we met a Chevrolet car and that the car was going much faster than the one we were riding in, that it almost crowded our car off and ran it against the curb, and that when it ran us against the curb, Castleberry lost control of the car and it caused the car to run into the building."

And further:

"There was a curve in the street right in there where we met the car. I saw the car before it got to us. It is not a straight street. I may be mistaken but I think there is a curve there. I didn't see Tommie G. swinging on to Riley's arm. I don't know what she did. After our car left the curb, I believe Tommie G. hollered 'look out' or something like that, I don't know exactly what she said. Perhaps she was talking to Riley. That is all I remember. With reference to whether Tommie G. Hooks grabbed the steering wheel or what she did with reference to the steering wheel, I will say I did not see her do anything."

The defendant Riley Castleberry testified, in part:

"When I entered the car with Tommie G. and Clem, I was right close to the Redland Hotel. The car belonged to Miss Hooks. It was somewhere around ten o'clock. She asked us to go riding—Clem and myself. We both got into the car then. We drove around in town and down East Main Street. We went through three blocks—on the south side of Fitch's Filling Station we turned around."

And further:

"She drove the car off from the Redland Hotel, then I drove when we got down to the filling station. Miss Hooks asked me if I cared to drive. I don't remember the words she used. She stopped at the filling station and where we were supposed to turn around, I took the wheel.

"We got out on West Main along about Bonita Creek somewhere around eleven, I don't know exactly. When we reached the curve on West Main Street, we met a car. He (the man driving the other car) took more room than he was supposed to and forced me onto the sidewalk. I pulled it back into the street, as I did, the back wheel was still on the sidewalk and when I jerked the car, the wheel hit the banister of the bridge and got out of balance. She grabbed the wheel and pulled it back over, and as I started to jerk it back into the street, it made a turn into the building. When she caught the wheel, we were right up on the sidewalk. It was my intention to get the car back into the street. We hit the second building. She grabbed at the wheel and it knocked it out of my hand."

And further:

"After we came into here—on the sidewalk, we were headed toward the banister and when we hit the banister, I gave the wheel a jerk. After I hit the banister, she grabbed at it and I grabbed it again and it came back

around that way. She grabbed it the second time and it ran it into the building."

And further:

"After hitting the banister and when I went to pull the car back to keep it from going into the creek, she grabbed it the first time. She grabbed the wheel and tried to help me straighten the car in the road. She was trying to help straighten the car in the road. I don't remember what she said. She pulled the wheel too far and we ran into the building."

And further:

"I had been driving the car something like thirty minutes when the accident occurred. She had not tried to take the wheel a time before this happened."

And further:

"When I got in the car, Miss Hook said would I like or did I want to drive and I told her yes. I drove around town about an hour or something like that. I had charge of the operation of the car. She didn't try to tell me how to drive."

And further:

"As the car drew up close, it crowded me into the north curb of the street. When he did, my front wheel ran up on the curbing and I ran into the banister on the bridge. I did not lose control of the car then. After hitting the banister and when I went to pull the car back to keep it from going into the creek, she grabbed it the first time. She grabbed the wheel and tried to help me straighten the car in the road. She was trying to help straighten the car in the road. I don't remember what she said. She pulled the wheel too far and we ran into the building.

"Miss Hooks had not grabbed the wheel prior to the time the car crowded us onto the sidewalk and we hit the banister. It had not been necessary for her to interfere."

And further:

"Her catching the wheel and pulling it too far to the right after I had run into the banister on the bridge was the cause of my running into the building."

And further:

"With reference to how the accident occurred, I told Dr. Drewery if she hadn't grabbed the wheel, I would have straightened it out and missed the building."

## Opinion.

■ Appellant's first proposition is that she was entitled to an instructed verdict because her act in seizing the wheel was "an act in an emergency" and, therefore, in law did not and could not constitute negligence. The language of her proposition is that "an act in an emergency and for the purpose of saving life, limb or property, even though it results in injury to another does not constitute negligence." In other words, she contends that where the defendant, in an emergency, acts on his "own best judgment," he cannot be convicted of negligence. That is not the rule in Texas. The test of negligence is the exercise of ordinary care. The emergency is merely one of the attending circumstances of the injury. The act of the defendant must be tested by all the attending circumstances from which the jury may or may not deduce negligence. Except in the most exceptional circumstances, the issue of negligence is an issue of fact and not of law. Counsel for appellants say they have found no Texas cases in point for or against their proposition. We think this proposition is controlled by the measure of care required upon the discovery of the plaintiff's peril by the defendant. In those cases, that the defendant acted upon his "own best judgment" is not the proper standard; but where the plaintiff's peril has been discovered the defendant can defeat the charge of negligence only by proof that in the emergency he exercised ordinary care. The rule enforced in Texas on this issue is thus stated by 45 C. J. 992: "There can be no recovery if defendant, after becoming aware of the plaintiff's peril, did what an ordinarily prudent person would have done under the same or similar circumstances to avoid the injury." But the defendant must satisfy the jury that he "did what an ordinarily prudent person would have done." If appellant, in seizing the wheel, did what an ordinarily prudent person would have done, she was not guilty of negligence. But if an ordinarily prudent person would not have seized the wheel, then she was guilty of negligence. That was the issue in the case properly submitted by the question sent to the jury by the court's charge.

■ Appellant pleaded affirmatively that the act of the driver of the Chevrolet car was "the sole proximate cause" of the injury and by properly worded questions requested the submission of this issue to the jury, which was refused. This refusal was error. The evidence quoted above clearly raised the issue that the Chevrolet car was being driven in a negligent manner and that such negligence was a proximate cause of the injury sued for. The evidence also raised the issue that the act of appellant in seizing the wheel of her car was not negligence. If she was not guilty of negligence, then the manner in which the Chevrolet car was being driven was not only a proximate cause of the accident but in law "the sole proximate cause." That the jury convicted appellant of negligence does not cure the error in refusing appellant's requested issues. Had the jury had all the issues before it, the verdict might have been different, for without the submission of the issue of sole proximate cause the jury, as said by the Supreme Court in Galveston, H. & S. A. Railway Co. v. Washington, 94 Tex. 510, 63 S. W. 534, 538, "may have disregarded a defense which they might have given

effect to if it had been brought to their attention."

■ The refusal of the issue of "unavoidable accident" requested by the following question was not error:

"Was the collision of the Hooks car with the plaintiff's building the result of an unavoidable accident."

In support of this proposition appellant cites Russell v. Bailey, 290 S. W. 1108, where we said, citing the leading authorities, that the defendant would not be liable if the injury occurred "in a manner not alleged by plaintiff." The argument is that since the evidence clearly raised the issue that the sole proximate cause of the injury was the act of the driver of the Chevrolet car, and since his act was not charged by plaintiff as one of the causes of the injury, the issue of unavoidable accident was raised. Appellant has confused the defense of unavoidable accident with the additional defense "that the injury did not occur in the manner alleged in plaintiff's petition." These are two separate and distinct issues and when raised by the evidence should be separately submitted. They were so recognized by the Supreme Court in Galveston, H. & S. A. Railway v. Washington, supra, where it was said:

"The statement by James Washington was admissible to prove that the injury did not occur in the manner alleged in the plaintiff's petition, and, if believed to be true, would have furnished a defense to the plaintiff's action, although it might not have been an unavoidable accident. The special charge which was requested and refused would have presented both phases of the defense. These defenses were in no way connected with that of contributory negligence, pleaded by the defendant, and were not embraced in the charge of the court upon that subject."

This distinction was also recognized by us in Russell v. Bailey and by the Commission of Appeals in Rosenthal Dry Goods Co. v. Hillebrandt, 7 S.W.(2d) 521, 523, where Russell v. Bailey was cited and discussed with approval. Appellant did not ask the submission of the issue that the injury occurred "in a manner not alleged by plaintiff." On no other theory is it contended that the evidence raised the issue of unavoidable accident. We think the issue of sole proximate cause fully presented to the jury every defense available to appellant based upon the act of the driver of the Chevrolet car.

■ Appellant also complains of the refusal of the issue that her act in seizing the steering wheel of her car was caused by sudden panic upon her part. On the evidence before us the refusal of this issue was not error, since the issue was not raised. However, if upon another trial the issue is raised, it should be submitted, for the rule is that: "No person will be held responsible for his acts or omissions which occur when, through no fault of his own, his mind is in such a state of fright or terror as to render him incapable of acting with ordinary care and prudence." 18 Texas & Southwestern Digest, subject Negligence, ■ Graham v. Hines (Tex. Civ. App.) 240 S. W. 1015. In submitting this issue the jury should be charged that the "sudden panic" must not be occasioned through the fault or negligence of the defendant. This element was not embodied in the issues requested by appellant, and therefore for this additional reason their refusal did not constitute error.

We pretermit a discussion of appellant's assignments against the court's definition of "proximate cause," since upon another trial all the errors assigned may be obviated by the giving of the definition formulated by Mr. Chief Justice Hightower of this court in Linn Motor Co. v. Wilson, 14 S.W.(2d) 867, and by defining the technical terms used in this definition, as required by the Commission of Appeals in Robertson & Mueller v. Holden 1 S.W.(2d) 570.

Reversed and remanded for a new trial.