Sharon P. THOMAS and Alice McNeal, Petitioners,

v.

Howard OLDHAM and City of Houston, Respondents.

Daniel GIBSON, Petitioner,

v.

Candace Katamay SPINKS, Respondent.

Nos. D–4559, 94–0207.

Supreme Court of Texas.

Argued Sept. 21, 1994.

Decided March 16, 1995.

Alan D. Bynum, James H. Brannon, Houston, for Sharon P. Thomas and Alice McNeal.

Andrea Chan, Houston, for Howard Oldham and City of Houston.

J. Arnold Aguilar, Lisa Marie Ellis, Charles V. Willette, Jr., Brownsville, Ronald H. Clark, Sherman, for Daniel Gibson.

Dennis Sanchez, John Haywood, Brownsville, for Candace Katamay Spinks.

PHILLIPS, Chief Justice, delivered the opinion of the Court, in which GONZALEZ, HIGHTOWER, HECHT, CORNYN, ENOCH, SPECTOR and OWEN, Justices, joined.

A judgment in an action against a governmental unit under the Texas Tort Claims Act "bars any action involving the same subject matter" against the employee whose acts gave rise to the claim. See Tex.Civ.Prac. & Rem.Code § 101.106. The primary issue presented in these consolidated cases is whether section 101.106 bars the simultaneous rendition of judgment against a governmental unit and its employee. Holding that it does, we affirm in part and reverse in part the judgments of the courts of appeals in *Oldham v. Thomas,* 864 S.W.2d 121 (Tex. App.—Houston, 1993), and *Gibson v. Spinks,* 869 S.W.2d 529 (Tex.App.—Corpus Christi, 1993).

## I

### *Oldham v. Thomas*

Howard Oldham, while driving in the course and scope of his employment with the City of Houston, rear-ended a car driven by Sharon Thomas and owned by Thomas' mother Alice McNeal. Thomas suffered injuries to her neck requiring surgery, while McNeal, who was not in the car at the time of the accident, suffered only property damage. Thomas and McNeal sued both Oldham and the City of Houston under the Texas Tort Claims Act. Tex.Civ.Prac. & Rem.Code §§ 101.001–101.109.

At trial, the jury awarded Thomas $500,000 for her personal injuries and McNeal $3,300 for her property damage. The court rendered judgment for Thomas against Oldham and the City jointly and severally for $250,000, the City's limit of liability for personal injuries under the Tort Claims Act. See Tex.Civ.Prac. & Rem.Code § 101.023(c). The court rendered judgment solely against Oldham for the balance of Thomas' injuries, plus prejudgment interest, totalling $429,508.

For McNeal, the court rendered judgment against Oldham and the City jointly and severally for her property damage, which was well within a municipality's separate liability cap of $100,000 for injury to property. See *id.*

Both Oldham and the City appealed. Oldham argued that, under section 101.106, the judgment rendered against the City barred the concurrent judgment rendered against him. The court of appeals agreed, reforming the trial court's judgment to provide that Thomas and McNeal recover nothing from Oldham.[1] The City additionally urged that

---

1. There is some confusion regarding the extent of Oldham's complaint and the relief he received. Oldham's first point of error in the court of appeals complained that "[t]he trial court erred in assessing judgment of $429,508 against Oldham individually because the award is barred by section 101.106 of the Texas Tort Claims Act." Thus, Oldham expressly complained only about the excess judgment rendered against him for Thomas' injuries, not the $250,000 portion for which he was jointly and severally liable with the City nor McNeal's property damage for which he

the trial court erred in refusing to instruct the jury on "sudden emergency," and that the evidence was factually and legally insufficient to support Thomas' and McNeal's damage awards. The court of appeals rejected these arguments, affirming the judgment against the City in all respects.

### Gibson v. Spinks

While driving in the course and scope of his employment with the Town of South Padre Island, Daniel Gibson ran a red light, colliding with the vehicle in which Candace Spinks was riding. Spinks, who suffered a lower back injury, sued the Town and Gibson. At trial, the court, sitting without a jury, awarded Spinks $350,000 for her injuries. The court rendered judgment against Gibson and the Town, jointly and severally, for $350,000 plus interest and costs, but further ordered that the Town's liability "be limited as a municipality to Two Hundred Fifty Thousand Dollars." *See* Tex.Civ.Prac. & Rem.Code § 101.023(c). The Town subsequently paid its liability limit of $250,000 to Spinks.

Gibson appealed, raising the bar of section 101.106. The court, expressly disagreeing with the court of appeals' holding in *Oldham*, held that section 101.106 does not bar the rendition of concurrent judgments against a governmental unit and its employee. The court accordingly affirmed the judgment of the trial court.

We granted writ of error in both *Oldham* and *Gibson* to resolve the conflict concerning the scope of section 101.106.

### II

■ Section 101.106 of the Texas Civil Practices and Remedies Code provides as follows:

A judgment in an action or a settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the gov-

ernmental unit whose act or omission gave rise to the claim.

Oldham and Gibson argue that this provision bars the rendition of judgment against an employee concurrently with rendition of judgment against the governmental employer. We agree.

It is, of course, beyond dispute that a *prior* judgment against the governmental employer bars continuation of an action against the employee that has not yet proceeded to judgment. *See, e.g., Cox v. Klug,* 855 S.W.2d 276, 280 (Tex.App.—Amarillo 1993, no writ); *Davis v. Mathis,* 846 S.W.2d 84, 88–89 (Tex. App.—Dallas 1992, no writ); *City of Bedford v. Schattman,* 776 S.W.2d 812, 813 (Tex. App.—Fort Worth 1989, orig. proceeding); *Steele v. Barbian,* 620 S.W.2d 875, 877 (Tex. Civ.App.—Amarillo 1981, no writ). This Court, however, has never addressed the extent to which section 101.106 might provide broader protection.

The express language of section 101.106 states that a judgment in an action against the governmental unit *bars any action* against the employee. It does not require that the judgment against the governmental unit precede any judgment against the employee, or otherwise impose particular timing requirements. Under these circumstances, we hold that the bar of section 101.106 applies if the settlement or judgment in the action against the governmental unit occurs at any time before or during the pendency of the "action" against the employee.

■ Thomas and Spinks do not directly dispute this conclusion, but argue that an "action" culminates when judgment is first rendered. Further, they interpret section 101.106 as applying only if the judgment against the government is in place *before* the action against the employee culminates in judgment. Thus, a judgment against the governmental unit does not bar a *concurrent* judgment against the employee.

was also jointly and severally liable. The court of appeals concluded in its opinion, however, that "the judgment against the City in this case bars the action against appellant Oldham," and rendered judgment reforming "the judgment of the court below to order that appellees take

nothing against Howard P. Oldham individually." Thus, the court of appeals' judgment completely releases Oldham of all liability, and Thomas makes no complaint that the court of appeals granted more relief than requested by Oldham.

We believe that the statute is unclear as to whether it would apply when the action against the employee concludes simultaneously with rendition of judgment against the government. It is not necessary to resolve that issue here, however, because we disagree that an "action" ends with the trial court's rendition of judgment.

The term "action" is generally synonymous with "suit," which is a demand of one's rights in court. See Bradley v. Etessam, 703 S.W.2d 237, 241 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). This Court has likewise equated "action" with "suit." See United Production Corp. v. Hughes, 137 Tex. 21, 152 S.W.2d 327, 330 (1941) ("To constitute the proceeding 'a suit' or 'action,' in any legal sense, it is essential that it rest in a court, with the power to hear it.").

Under Texas procedure, a plaintiff's suit does not end with rendition of judgment. Rather, the parties may file one or more motions for new trial within 30 days after rendition of judgment. See Tex.R.Civ.P. 329b(a), (b). The trial court may in its discretion grant such a motion within 75 days after the judgment is signed, continuing the action for a new trial. Also, the parties may file motions to modify, correct, or reform the judgment within thirty days after the judgment is signed, which may result in a new and different judgment being rendered. Id. If a motion for new trial or motion to modify the judgment is overruled, the trial court still retains plenary power to vacate, modify, correct or reform the judgment for an additional thirty day period. Tex.R.Civ.P. 329b(e).

We hold that a party's "suit" or "action" continues at least until the expiration of the trial court's plenary power over the proceed-

ing.[2] Because the judgments against the municipal employers in these cases were rendered during the period in which the trial court retained plenary power over the actions against the employees, those actions were barred under section 101.106.

Thomas and Spinks rely on Garcia v. Jones, 147 S.W.2d 925, 926 (Tex.Civ.App.—El Paso 1940, writ dism'd judgm't cor.), in which the court stated that "a final judgment is one that terminates an action." Thomas and Spinks conclude from this authority that an action terminates when judgment is first rendered. The issue in Garcia, however, was not when an action terminates, but whether the proceeding underlying the appeal constituted an "action" in the first place.[3] The broad language from Garcia cited by Thomas and Spinks will not support their position here.

Thomas and Spinks also rely on Madisonville Indep. Sch. Dist. v. Kyle, 658 S.W.2d 149 (Tex.1983) (per curiam). There, the trial court rendered a joint and several judgment against the defendant school district and its employee whose actions gave rise to the claim. Both the school district and the employee appealed, arguing that the damages were excessive. Because this Court affirmed the award against both defendants,[4] Thomas and Spinks contend that we adopted their construction of section 101.106. The individual defendant in Kyle, however, did not raise section 101.106, and the scope of that provision was not an issue before the Court.[5]

Our construction accords with the federal courts' treatment of a similar federal statute. A judgment against the United States under the Federal Tort Claims Act "constitute[s] a complete bar to any action by the claimant,

2. We express no opinion as to whether an "action" within the meaning of section 101.106 may continue after the expiration of the trial court's plenary jurisdiction in connection with an appeal or efforts to collect a judgment.

3. The defendants had filed a motion to "redocket" a previously concluded case, claiming that the trial court's judgment had not been final. After the trial court overruled this motion, the defendants appealed. The court of appeals dismissed the appeal, concluding that the motion to redocket was not an "action" that would support an appeal.

4. The award against the school district was reduced in accordance with the Tort Claims Act liability cap, but was otherwise affirmed. 658 S.W.2d at 150.

5. The only other court of appeals addressing this issue likewise construed section 101.106 as barring simultaneous judgments against a governmental unit and its employee. See White v. Annis, 864 S.W.2d 127, 132 (Tex.App.—Dallas 1993, writ denied).

by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." 28 U.S.C. § 2676. Federal courts have uniformly interpreted this section as barring the rendition of simultaneous judgments against the United States and its employee. *See, e.g., Rodriguez v. Handy,* 873 F.2d 814, 816 (5th Cir.1989); *Arevalo v. Woods,* 811 F.2d 487, 490 (9th Cir.1987); *Serra v. Pichardo,* 786 F.2d 237, 241 (6th Cir.), *cert. denied,* 479 U.S. 826, 107 S.Ct. 103, 93 L.Ed.2d 53 (1986); *Aetna Cas. & Sur. Co. v. United States,* 570 F.2d 1197, 1201 (4th Cir.1978). The court concluded in *Arevalo* that "[t]he moment judgment was entered against the government, then by virtue of section 2676, Woods was no longer answerable to Arevalo for damages." 811 F.2d at 490.[6]

Thomas and Spinks argue that our interpretation of section 101.106 leads to judicial inefficiency, as a plaintiff must prosecute two separate lawsuits to achieve full compensation. While this may be true under certain circumstances, we believe this result is dictated by the language of the statute.

Thomas additionally argues that if section 101.106 prohibits concurrent judgments against a governmental unit and its employee, then other statutory provisions allowing or requiring governmental units to provide liability insurance for their employees would be rendered meaningless. *See, e.g.,* Tex.Civ. Prac. & Rem.Code § 101.027; Tex.Loc.Gov't Code § 142.007. Rather than providing blanket protection to employees, however, section 101.106 merely protects them in those situations where a judgment or settlement is obtained from the governmental employer.[7]

For the foregoing reasons, we hold that a judgment in an action against a governmental unit under the Tort Claims Act bars the simultaneous rendition of judgment against the employee whose actions gave rise to the claim.

### III

▮ Spinks further argues that, if section 101.106 bars simultaneous judgments, it violates the open courts guarantee of the Texas Constitution. That guarantee is as follows:

> ... All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.

Tex. Const. art. I, § 13. This provision, among other things, prohibits the Legislature from unreasonably restricting common law causes of action. *See Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 448 (Tex.1993).

A litigant challenging a statute as unconstitutionally restricting a common law cause of action must demonstrate 1) that the statute restricts a well-recognized common law cause of action, and 2) that the restriction is unreasonable when balanced against the purpose of the statute. *See Sax v. Votteler,* 648 S.W.2d 661, 666 (Tex.1983); *Lebohm v. City of Galveston,* 154 Tex. 192, 275 S.W.2d 951, 955 (1955). Here, Spinks fails to satisfy the first criterion.

The Tort Claims Act broadened, rather than restricted, an injured party's remedies. At common law, municipalities performing governmental functions were completely immune from liability. The Tort Claims Act created a limited waiver of that immunity. Although a plaintiff who pursues the statutory remedy against the government may lose his or her common law remedy against the

---

**6.** Pursuant to a 1988 amendment to the Federal Tort Claims Act, the cause of action against the United States is now the exclusive remedy for torts committed by federal employees acting in the scope of employment. *See* 28 U.S.C. § 2679(b)(1). This expanded protection for employees should, under most circumstances, render the scope of section 2676 moot.

**7.** Thomas and Spinks also point to the title of section 101.106, "Employees Not Liable After Settlement or Judgment," as supporting their construction. Although we may consider a section's title or caption when construing a statutory code provision, *see* Tex.Gov't Code § 311.023(7), we do not find the title particularly helpful here. On the one hand, it includes the word "after," which according to Thomas and Spinks supports the view that concurrent judgments are not prohibited. On the other hand, the title arguably indicates that the employee is protected from liability after settlement or judgment against the governmental unit, regardless of the timing of any judgment against the employee.

employee, the plaintiff is not required to follow this course. He or she may still opt to pursue the full common law remedy against the responsible employee, foregoing or postponing any attempt to recover from the government.[8] Section 101.106 thus does not violate the Texas Constitution.

## IV

### A

■ Spinks alternatively argues that Gibson waived any right to rely on section 101.106 by failing to plead that section until his motion for new trial, filed after the rendition of judgment. According to Spinks, any bar provided under section 101.106 constitutes an affirmative defense that, under Tex. R.Civ.P. 94, must be affirmatively raised by the defendant in the answer. Spinks further claims that she suffered prejudice because, had Gibson indicated prior to judgment that he intended to rely on section 101.106, she could have nonsuited the Town, thereby avoiding the statutory bar.

Even if section 101.106 constitutes an affirmative defense, an issue we do not decide, Gibson could not have raised it prior to the motion for new trial because the basis for the defense did not exist until that time. Section 101.106 only bars the continuation of the action against the employee *after* judgment is rendered in the action against the governmental unit. Until the judgment was rendered against the Town of South Padre Island (concurrently with the rendition of the judgment against Gibson), Gibson had no basis to assert the bar of section 101.106. Gibson's first opportunity to raise that bar was in his motion for new trial, filed after rendition of the concurrent judgments. His failure to earlier advise that he might assert the defense when and if it became available cannot constitute waiver. Under these circumstances, we hold that Gibson timely asserted section 101.106 in the trial court.

### B

■ Spinks also argues that Gibson waived error on appeal because his point of error here raising section 101.106 was not identical to the one he presented in his brief to the court of appeals.[9] Gibson's point of error here complains in pertinent part as follows:

> The court of appeals erred in ... affirming the judgment of the district court entering a judgment against petitioner Daniel Gibson ... because the judgment against the Town of South Padre Island barred any judgment or further action against petitioner, in accordance with Texas Civil Practice and Remedies Code Section 101.106.

Gibson's point of error in the court of appeals was as follows:

> The trial court erred as a matter of law by entering a joint and several judgment against the Town and its employee Dan Gibson in an amount in excess of the applicable Tort Claims Act cap ... since the judgment against the Town barred Plaintiff's action against Gibson in accordance with Section 101.106 of the Tort Claims Act.

According to Spinks, the court of appeals point is materially different because it complains not about the entire judgment against Gibson, but only about that portion in excess of the liability cap.

We hold that Gibson fairly presented to the court of appeals the same complaint he is raising here. His point in the court of appeals expressly argued that "the judgment against the Town barred Plaintiff's action against Gibson." At the time of appeal, the Town had paid the liability limits, so that the only portion in controversy was the excess judgment rendered against Gibson.

## V

By separate application, the City of Houston alleges that no evidence supports McNeal's and Thomas' damage awards and

---

8. As noted previously, we express no opinion on whether, or to what extent, an "action" within the meaning of section 101.106 may continue after the expiration of the trial court's plenary jurisdiction.

9. Gibson's point of error in this Court does match the one he presented to the court of appeals on rehearing.

that the trial court committed reversible error by not instructing the jury on "sudden emergency."

### A

■ The City first contends that there is no evidence supporting the jury's finding that McNeal suffered $3,300 in property damage. The standard for measuring damage to personal property is the difference in its market value immediately before and immediately after the injury, at the place where the damage occurred. *See Pasadena State Bank v. Isaac,* 149 Tex. 47, 228 S.W.2d 127, 128 (1950). The extent of the testimony regarding damage to the car came from McNeal, who testified as follows: [10]

Q: What kind of car was it?
A: It was an '84 Pontiac 1000.

\* \* \* \* \* \*

Q: Okay. Was the car ever repaired?
A: No, it wasn't. To my knowledge it wasn't.
Q: What was the value of the car?
A: About 3,250.

We agree that this is legally insufficient evidence of damage under the *Pasadena State Bank* standard, as McNeal did not specifically tie her estimate of value to Harris County, the location of the accident. *See Peter Saltpeter Energy Co. v. Crystal Oil Co.,* 524 S.W.2d 383, 387 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.) (testimony of property's value in Jim Wells County is legally insufficient evidence of its value in

San Patricio County). Also, the jury could not reasonably infer that McNeal was testifying as to Harris County value. The record reflects that she was a resident of Mobile, Alabama, and there is no evidence that she had ever lived in Harris County or purchased or sold automobiles there. *Cf. Bass v. McClung Roofing Co.,* 575 S.W.2d 342, 344 (Tex.Civ.App.—Fort Worth 1978, no writ) (for purposes of determining damages, jury could infer that salvage sale occurred in Tarrant County from witness' reference to the "Tarrant County Salvage Pool"). Accordingly, we hold that there is no evidence supporting McNeal's damage award of $3,300.

### B

■ The City next argues that there is no evidence supporting certain elements of Thomas' $500,000 personal injury verdict. The trial court submitted a broad form damage question, instructing the jury to consider five separate elements of damage but asking for just one total amount. The jury returned an answer of $500,000, but also made marginal notes of specific amounts for each element, totalling $500,000.[11] The City, focusing on the jury's margin notations, argues that there is legally insufficient evidence supporting the award of $75,000 for loss of earning capacity and $100,000 for medical care.

We cannot consider the margin notations as separate damage awards for purposes of evidentiary review. *See First National Bank in Dallas v. Zimmerman,* 442 S.W.2d 674 (Tex.1969); *see also Wal-mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 328 (Tex.

---

**10.** An owner may testify to the value of his or her own property if the testimony relates to the market value of the property, rather than intrinsic value. *See Porras v. Craig,* 675 S.W.2d 503, 504–05 (Tex.1984). The City does not argue that McNeal's testimony should be disregarded because it relates to intrinsic, rather than market, value.

**11.** The damage question, with the jury's answer and margin notations noted in bold, was as follows:

What sum of money, if paid now in cash, would fairly and reasonably compensate SHARON THOMAS for her injuries, if any, that resulted from the occurrence in question? Consider the elements of damage listed below and none other. Consider each element

separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

| | | |
|---|---|---|
| Element a. | Physical pain and mental anguish. | **$245,000.00** |
| Element b. | Loss of earning capacity. | **$ 75,000.00** |
| Element c. | Disfigurement. | **$ 5,000.00** |
| Element d. | Physical impairment. | **$ 75,000.00** |
| Element e. | Medical care. | **$100,000.00** |

Do not reduce the amounts, if any, in your answers because of the negligence, if any, of SHARON THOMAS.

Answer in dollars and cents for damages, if any, that were sustained in the past and that in reasonable probability will be sustained in the future.

Answer: **$500,000.00**

1993). The Court stated in *Zimmerman* that the jury's "handwritten notation was not the jury's verdict; it merely reflected the jury's mental processes in arriving at their verdict.... The jury's reasons for reaching a particular verdict are irrelevant, at least in the absence of some overt act of misconduct." 442 S.W.2d at 678. Here, the jury's verdict regarding Thomas' damages was $500,000. The City does not argue that the evidence favorable to this verdict, considered as a whole, is legally insufficient to support it. We therefore reject the City's no evidence challenge regarding Thomas' damages.

### C

■ The City finally urges that the trial court abused its discretion by not instructing the jury on "sudden emergency." The trial court refused to submit the following instruction requested by the City:

> When a person is confronted by an "emergency" arising suddenly and unexpectedly, which was not proximately caused by any negligence on his part and which, to a reasonable person, requires immediate action without time for deliberation, his conduct in such an emergency is not negligence or failure to use ordinary care if, after such emergency arises, he acts as a person of ordinary prudence would have acted under the same or similar circumstances.

This instruction is consistent with the sudden emergency instruction previously approved by this Court. *See McDonald Transit, Inc. v. Moore*, 565 S.W.2d 43, 44 (Tex.1978).

Thomas and Oldham's accident occurred while Thomas was executing a U-turn at an intersection. Oldham testified that he was travelling the posted speed limit of 35 m.p.h. when Thomas, who was only 2–3 car lengths ahead, began her U-turn. The City argues that this testimony, even though contradicted by other evidence, raises a fact issue on sudden emergency, rendering the instruction proper. Therefore, according to the City, the trial court abused its discretion by refusing to submit it. *See* Tex.R.Civ.P. 277 ("The court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict."). Under the facts of this case, however, we agree with the court of appeals that it was not an abuse of discretion to refuse the instruction.

For the foregoing reasons, we reverse in part the judgment of the court of appeals in *Oldham v. Thomas*, rendering judgment that McNeal take nothing from the City of Houston. The remainder of the judgment of the court of appeals in *Oldham v. Thomas* is affirmed. We reverse in part the judgment of the court of appeals in *Gibson v. Spinks*, rendering judgment that Spinks take nothing from Gibson. The remainder of the judgment of the court of appeals in *Gibson v. Spinks* is affirmed.

HECHT, J., filed a concurring opinion, in which OWEN, J., joined.

ENOCH, J., filed a concurring opinion.

GAMMAGE, J., filed a dissenting opinion.

HECHT, Justice, joined by OWEN, Justice, concurring.

I join in the Court's opinion and write briefly only to respond to JUSTICE ENOCH's concurring opinion. The argument there, as I understand it, is that a trial court's refusal to instruct the jury on the duty of care in a sudden emergency may be an abuse of discretion, but it can never be harmful, and therefore the instruction should never be given. The general proposition of this argument—that discretion should always be abused as long as no harm is done—is a peculiar notion, to say the least, to which the concurring opinion resorts because the only other way to discard the sudden emergency instruction is to disavow, straightforwardly, over six decades of Texas jurisprudence dating back to *Hooks v. Orton*, 30 S.W.2d 681 (Tex.Civ.App.—Beaumont 1930, no writ). *See* E. Wayne Thode, *Imminent Peril and Emergency in Texas*, 40 TEX.L.REV. 441, 452 (1962). This would require overruling *Yarborough v. Berner*, 467 S.W.2d 188, 191–193 (Tex.1971), in which this Court held that when the pleadings and evidence raise an issue of sudden emergency, a party is entitled to a jury instruction on the subject. It would also require overruling *Davila v. Sanders*, 557 S.W.2d 770, 771 (Tex.1977) (per

curiam), in which we refused to discard the sudden emergency instruction although we abolished the doctrine of imminent peril. It would also require disapproving dozens of appeals court cases before and after *Yarborough,* and the Pattern Jury Charge instruction on sudden emergency. 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES, PJC 3.03 (1989).[1] Finally, it would call into question other pattern instructions on similar "inferential rebuttal" issues, including "new and independent cause", "sole proximate cause", "unavoidable accident", and "act of God". *Id.* PJC 3.01–.02, 3.04–.05.

The rationale put forward in the concurring opinion for what would be a significant about-face in the law is that the substance of instructions like these is covered by other definitions and instructions in the charge, so that "inferential rebuttal" instructions are duplicative and unnecessary. This view assumes that it is a good thing for trial courts to tell juries as little as possible about the parties' legal claims, a very dubious assumption at best. It may be that jurors unfamiliar with the law can, without too much difficulty, understand from the definition of negligence that ordinary care means one thing in sudden emergencies and another thing in less exigent circumstances. It may be that jurors can recognize that some accidents are unavoidable or the result of natural forces and not anyone's fault. It may be that jurors can sort through the causative agents in an occurrence without any more guidance than the standard proximate cause definition provides. Even so, there is very little harm, and some advantage, in a trial court's helping the jury with concepts like these. The law has long recognized this. The instructions the concurring opinion would abandon serve this purpose. I agree with Justice Peeples: "Our law has work enough to do without attempting to change settled instructions, especially when they are not causing problems but instead are serving the worthwhile goal of clarifying the parties' contentions for the jury." *Perez v. Weingarten Realty Inves-*

*tors,* 881 S.W.2d 490, 498 (Tex.App.—San Antonio 1994, writ requested) (Peeples, J., concurring).

The trial court must be afforded some discretion in deciding what instructions to give the jury. *See Magro v. Ragsdale Bros., Inc.,* 721 S.W.2d 832, 836 (Tex.1986). Given the disputed evidence in this case, I agree with the Court that the trial court did not abuse its discretion in refusing to instruct the jury on sudden emergency.

ENOCH, Justice, concurring.

I agree with the Court's opinion. I write separately with regard to Part V(C). The City of Houston asserts as error the trial court's failure to submit the City's requested instruction on "sudden emergency." I question whether, even if an abuse of discretion, the refusal to submit a "sudden emergency" instruction to the jury in a suit based upon negligence would be anything other than harmless error. We are not compelled to reach that consideration in this case, but the Court's opinion in Part V(C) implies that such a failure under other facts might not be harmless.

In my view the failure to submit a "sudden emergency" instruction in a negligence case can only be harmless error. As in this case, the jury in a negligence case is instructed that:

"Negligence" means failure to use ordinary care, that is failing to do that which a person of ordinary prudence would have done *under the same or similar circumstances* or doing that which a person of ordinary prudence would not have done *under the same or similar circumstances.* "Ordinary care" means that degree of care that would be used by a person of ordinary prudence *under the same or similar circumstances.*

1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 2.01 (1991) (emphasis added.) These definitions expressly instruct the jury to evaluate the party's conduct in the context

1. "When a person is confronted by an 'emergency' arising suddenly and unexpectedly, which was not proximately caused by any negligence on his part and which, to a reasonable person, requires immediate action without time for deliber-

ation, his conduct in such an emergency is not negligence or failure to use ordinary care if, after such emergency arises, he acts as a person of ordinary prudence would have acted under the same or similar circumstances."

of the surrounding circumstances. It cannot be argued that an "emergency" is not a "similar circumstance" under which a party's conduct should be measured. To fail to add a duplicative instruction, which merely reminds the jury that a person who acts with the prudence of an ordinary person under the circumstance of a "sudden emergency" is not negligent, can never be "such a denial of the rights of a defendant in a negligence suit as was reasonably calculated to cause and probably did cause the rendition of an improper judgment." TEX.R.APP.P. 184(b).[1] Because it is duplicative and can never amount to reversible error, the "sudden emergency" instruction is surplusage and should be discarded.[2]

Justice Hecht overstates his concern that abolition of the "sudden emergency" instruction would overrule past precedent. In particular, he cites to *Davila v. Sanders*, 557 S.W.2d 770 (Tex.1977) (per curiam). Yet in *Davila*, the "sudden emergency" instruction was not at issue. There, the Court simply rejected the use of an "imminent peril" instruction in negligence cases. *Davila* is not in jeopardy.

I join in the Court's opinion and disposition of this case, and I concur only to express the opinion that the practice of submitting a separate instruction on "sudden emergency" should be discontinued.

GAMMAGE, Justice, dissenting.

The question before the court is whether a concurrent judgment against a governmental unit and its employee whose negligence proximately caused the harm is barred as to the employee by section 12(a) of the Texas Tort Claims Act, now codified as TEX.CIV.PRAC. & REM.CODE § 101.106. The majority holds there is no recovery against the employee. In my view the majority has chosen the path least consistent with legislative intent and most suspect under the Open Courts provision of our constitution. I respectfully dissent.

The legislature directed us to construe the Texas Tort Claims Act liberally to effectuate its purposes. *Lowe v. Texas Tech University*, 540 S.W.2d 297, 298 (Tex.1976).[1] One of those purposes is to provide a remedy against the government for the misuse of tangible property when a private person would be liable,[2] but expressly not to take away a claimant's other remedies because "[t]he remedies authorized by this chapter are in addition to any other legal remedies."[3]

Against this backdrop of general purpose, this court must decide whether a *concurrent* judgment against both the government and the employee should or should not bar recovery against the employee. I think it is clear that the liberal construction and preservation of other legal remedies provisions of the Act dictate that recovery against the individual is not barred. Not requiring a separate suit against the individual is a practical construction that promotes judicial economy and

---

1. In *Hill v. Winn Dixie Texas, Inc.*, 849 S.W.2d 802, 803 (Tex.1992), this Court concluded that the trial court abused its discretion in submitting the "unavoidable accident" instruction. The "unavoidable accident" instruction is similar to the "sudden emergency" instruction—regardless of the existence of an accident, liability does not attach without negligent conduct. As a matter of logic, the Court in *Hill* was compelled to conclude that the error was harmless. In that case, I joined the dissent because "[i]t should not be error to tell the jury what the law recognizes— that some accidents occur without anyone's negligence." *Hill*, 849 S.W.2d at 805 (J. Hecht, dissenting). Whether given or refused, the "sudden emergency" instruction, like the "unavoidable accident" instruction cannot constitute reversible error.

2. Other states have rejected the "sudden emergency" instruction as unnecessary. *See McCly-*

---

*mont v. Morgan*, 238 Neb. 390, 470 N.W.2d 768, 771–72 (1991); *Simonson v. White*, 220 Mont. 14, 713 P.2d 983, 989 (1986); *Knapp v. Stanford*, 392 So.2d 196, 198–99 (Miss.1980); *Finley v. Wiley*, 103 N.J.Super. 95, 246 A.2d 715, 719 (1968). *See generally* Jeffrey F. Ghent, Annotation, *Modern Status of Sudden Emergency Doctrine*, 10 A.L.R. 5th 680, 687–695 (1993).

1. Section 13 of the original Act was omitted from the recodification because the revisor concluded section 3.03 of the Code Construction Act and similar general construction statutes would require the same principle of construction. 3 VERNON'S TEXAS CODES ANNOTATED, CIVIL PRACTICES & REMEDIES *Revisor's Note* 539 (1986).

2. TEX.CIV.PRAC. & REM.CODE § 101.021.

3. TEX CIV.PRAC & REM CODE § 101.003.

avoids a multiplicity of suits and procedural maneuvering.

The legislative history of section 101.106 as a specific section likewise supports this construction. The legislature did not intend to insulate the employee from all personal liability. Section 12(b) of the Tort Claims Act as originally introduced provided that the remedy against a governmental unit was to "be exclusive of any other civil action or proceeding by reason of the same subject matter against the employee." Tex.H.B. 456, 61st Leg., R.S. § 12(b) (1969). The legislature deleted this language from the enacted version of the bill at the request of the governor.[4] The Texas Tort Claims Act implicitly recognizes that employees may be held liable for their own negligence by providing that a governmental unit may buy insurance for its employees. TEX.CIV.PRAC. & REM.CODE § 101.027.

I think our principles of construction and legislative history require construing the statute not to bar recovery against the individual when the court simultaneously tries the causes of action and renders a concurrent judgment against both. The majority's claim that one "may still opt to pursue the full common law remedy against the responsible employee, foregoing or postponing any attempt to recover against the government,"[5] is a design for inefficient use of judicial resources and unnecessarily eliminates other existing common law remedies. It does violence to the intent of the legislature and the express language of the statute, and it should not be adopted.

Moreover, the majority misses the point of the Open Courts attack. It is the common law remedy against the *employee* that is well recognized. Adding an additional remedy against the governmental unit, but providing that a *concurrent* judgment bars the recovery thereby pronounced against the individual, unreasonably burdens the claimant's common law rights against the employee. *Sax v. Votteler*, 648 S.W.2d 661, 665 (Tex.1983). It

is no answer to say the claimant may forego or postpone suing the governmental unit until his recovery against the individual is complete. The Act states the remedy is in addition to others he may have. On the face of the statute, there is no reason to anticipate that an open courts problem will arise. The point is not whether the trade-off of giving a "limited" maximum $250,000 recovery against the governmental unit is a reasonable "fair trade" for the unlimited but potentially uncollectible liability of the individual. We should not even consider that construction, but should pursue the clear construction that complies with legislative intent and the rules of construction, and avoids raising a question of the statute's constitutionality under the Open Courts provision. For these reasons I respectfully dissent.

---

4. Although bills have repeatedly been submitted to amend section 101.106 to force claimants to elect between suing the governmental entity or the employee, the legislature has failed to enact such amendments.

