MEMORANDUM OPINION 

No. 04-05-00751-CV

Coolidge AKE,

Appellant

v.

Alexander MONROE,

Appellee

From the County Court at Law, Kerr County, Texas

Trial Court No. CV-04-0230

Honorable Spencer W. Brown , Judge Presiding




Opinion by: Sarah B. Duncan , Justice



Sitting: Sarah B. Duncan, Justice

 Karen Angelini, Justice

 Phylis J. Speedlin, Justice



Delivered and Filed: October 25, 2006



AFFIRMED

 On May 28, 2003, while stopped at a traffic light in his father's pickup truck, nineteen-year-old Alexander Monroe was
struck from behind by the truck being driven by Coolidge Ake. This suit ensued. Ake appeals the trial court's judgment in
Monroe's favor.

 1. Ake first argues the trial court abused its discretion in denying his motion for a continuance. We disagree. A trial court
abuses its discretion in denying a motion for a continuance to permit the movant to timely pay a jury fee if the trial can be
continued "without interfering with the court's docket, delaying the trial, or injuring the opposing party." General Motors
Corp. v. Gayle, 951 S.W.2d 469, 476 (Tex. 1997); see Universal Printing Co. v. Premier Victorian Homes, Inc., 73 S.W.3d
283, 293-94 (Tex. App.-Houston[14th Dist.] 2001, pet. denied). Ake first argues the trial court had no discretion to find that
a continuance would interfere with its docket because this finding would be inconsistent with the uncontroverted allegation
in his verified motion for a continuance that "Movant would show unto the Court that a thirty day delay in the trial of this
case would not materially interfere with the Court's docket." (1) See Garza v. Serrato, 699 S.W.2d 275, 281 (Tex. App.-San
Antonio 1985, writ ref'd n.r.e.) ("If the motion [for continuance] is verified and uncontroverted, the factual allegations must
be accepted as true."). We hold the Garza rule does not apply here for two reasons. First, the statement in Ake's motion that
a continuance would not materially interfere with the court's docket is entirely conclusory, completely unsupported by facts.
Additionally, since Ake did not file his motion until 3:00 p.m. on the Friday before the Monday, July 25, 2005, bench trial
setting, Monroe did not have a reasonable opportunity to file a written response. Accordingly, we must determine whether
the record supports the trial court's finding that a continuance would interfere with its docket.

 In his written statement regarding his reasons for denying Ake's motion, the trial judge states that the court over which he
presides (the Kerr County Court at Law) handles one-third of all the county's family law cases, as well as all its tax suits,
contested probate matters, civil cases in which the amount in controversy does not exceed $100,000, Class A and B
misdemeanor cases, and Class C misdemeanor appeals. The judge of the Kerr County Court at Law also assists the county
judge in handling juvenile cases, mental health cases, and probate cases. During the first five months of 2005, the court
disposed of an average of 239 criminal cases a month. To manage this extensive docket and timely dispose of the criminal
cases, the court sets at least fifteen misdemeanor cases for jury trial every other month. Scheduled around these criminal
jury trials are all the rest of the hearings and trials on the court's docket. This case had been set for a bench trial since March
16, discovery was complete, the case had been unsuccessfully mediated, and it was ready to be tried. Because the trial judge
knew the case was set for a bench trial and a jury had not been summoned, he had set aside a full day on the docket for the
trial. By the time the motion for a continuance was filed on the afternoon of the last business day before trial, it was too late
to schedule other matters to be heard on the day the bench trial was scheduled to begin. Knowing that if he granted the
continuance, he would lose one full day, the trial judge concluded that continuing the trial would have interfered with the
court's docket. 

 Ake argues the trial judge's conclusion that a continuance would interfere with the court's docket is belied by the judge's
statement to Ake's attorney on the Friday morning before trial that if a mistake had been made in setting the case for a bench
trial, then it would not be a problem to grant a continuance so the case could be set for a jury trial. However, as the trial
judge explained, if the jury fee had been timely paid and "the Court had made a mistake in setting the case for a bench trial,
it would have been the duty of the Court to reset it for a jury trial," without regard to any disruption to the docket. We
conclude the trial judge's concerns about the court's docket "are understandable and legitimate." See Universal Printing, 73
S.W.3d at 293. We therefore hold the trial court did not abuse its discretion in denying Ake's motion for continuance.

 2. Ake next challenges the sufficiency of the evidence to support the judgment insofar as it compensates Monroe for the
medical expenses and other damages he incurred after he began working because Monroe failed to prove that the symptoms
he started having after he began work were proximately caused by the accident and any aggravation of the injury Monroe
suffered in the accident was caused by Monroe's negligence and thus is deemed not to be the proximate result of the
accident. However, if a plaintiff establishes the causal nexus between his injury and the defendant's negligence, he "can
recover all damages proximately traceable to the primary negligence, including subsequent aggravations the probability of
which the law regards as a sequence and natural result likely to flow from the original injury." City of Port Arthur v.
Wallace, 141 Tex. 201, 171 S.W.2d 480, 483 (1943) (quoting 15 Am. Jur. Damages § 83 (1938)). When the plaintiff's
subsequent conduct aggravates the harmful effect of the original injury, "[t]he original wrongful act is deemed the
proximate cause of the entire injury, provided the [plaintiff's] act ... which aggravates the injury is within the course of
conduct of a reasonably prudent person under all the circumstances." Id.

 Monroe and his father both testified that Ake's truck was hit with such force that the truck was deemed a total loss by the
insurer. Monroe testified that, although he felt fine at the scene, he thought he might have "wrenched [his] back." Later that
evening Monroe went to the emergency room because he was feeling tense in his shoulders and upper body and was sore
across his chest and shoulders. The doctor on duty examined Monroe, diagnosed him with a sprained neck and back,
prescribed pain medication, and told Monroe to "take it easy" for the next few days. Over the next few weeks, Monroe
began having back pain and his father suggested he see a doctor. On June 17, 2003, Monroe saw Dr. Charles Lewis, an
orthopedic surgeon, complaining of pain in the mid and upper back area that stretched around his left side to his left rib
cage. After taking x-rays and examining Monroe, Dr. Lewis diagnosed a strain and told Monroe not to exert himself and
give it a few days to heal up. No follow-up visit was scheduled. 

 About two weeks later, at the beginning of July, Monroe began work in the warehouse of a feed store, where he moved
fifty-pound bags of feed, drove a forklift, and loaded feed into people's vehicles. Monroe testified that, although he had no
difficulty performing his job, he could feel the injury and thought it was exacerbated by doing his job. He testified he was
having trouble sleeping because it hurt when he moved around. When he woke up in the morning his back hurt and it was
difficult to take deep breaths because his chest hurt. Monroe testified that he did not have any kind of accident or suffer any
new injury while he worked at the feed store. 

 In mid-August 2003, Monroe moved to Bryan/College Station and immediately began work as a ranch hand. He did not
have any difficulty doing his job and, during this period of time, the pain in his back was not as magnified during the day.
However, he continued to toss and turn at night, have difficulty sleeping, and wake up unable to take full breaths and with
pain in his chest and around the left side of his body to his back. In September 2003, Monroe started working at a bar in
College Station. His duties included stocking beer, changing out kegs, and barbacking. Monroe continued to do similar
work until the time of trial. Throughout the winter of 2003 - 2004, Monroe worked up to sixty hours a week. He continued
to have trouble sleeping and pain when he awoke in the morning, and each time he picked up a keg or a case of beer he
would feel a "twang" on the left side of his ribs. 

 Monroe began seeing Dr. Ted Stephenson, a chiropractor, in February 2004. Dr. Stephenson's records reflect that Monroe
complained of pain in the upper and mid-back and into the left side of his chest, which was aggravated by activity and
interrupted his sleep. Monroe began a daily treatment program of spinal manipulation and passive therapies. He continued
his treatment with Dr. Stephenson over the next year, reducing the frequency of visits. During this period, his symptoms
remained the same. Although at times they were less pronounced, the pain did not go away and was exacerbated with
physical activity, and he continued to have difficulty sleeping and tightness in the left side of his chest after prolonged sleep
or rest. In March 2005, Monroe was seen by Dr. Mukund Gundanna, an orthopedic spine specialist. Dr. Gundanna
diagnosed a left thoracic strain, told Monroe there is no surgical intervention for his problem, and referred him to Gary
Johnson for physical therapy. At the time of trial, Monroe had been seeing Mr. Johnson bi-weekly for about five weeks. The
exercises and treatments he receives in physical therapy relieve the pain, but only temporarily. Monroe testified he intended
to continue physical therapy with Mr. Johnson. Monroe testified without contradiction that before the accident he had never
suffered the pain and discomfort he now has. He began feeling discomfort in his upper body on the night of the accident,
and it worsened over the next few weeks. He testified that the location of the pain has remained constant since the accident,
although its intensity has varied. And the medical records reflect that the location of the upper back and chest pain Monroe
described to Dr. Lewis in June 2003, before Monroe started work, was the same as that he described to Dr. Stephenson in
February 2004 and later to Dr. Gundanna in 2005. Monroe also testified, again without contradiction, that he did not suffer
any new injury at his various jobs, and none of the medical records reflect any new injury. We conclude Monroe's testimony
and the medical records establish "a sequence of events which provides a strong, logically traceable connection" between
the accident and Monroe's injury.See Morgan v. Compugraphic Corp., 675 S.W.2d 729, 733 (Tex. 1984); Byrd v.
Delasancha, 195 S.W.3d 834, 837-39 (Tex. App.-Dallas 2006, no pet.); Blankenship v. Mirick, 984 S.W.2d 771, 774-76
(Tex. App.-Waco 1999, pet. denied).

 Ake argues that he is nevertheless not liable for all of Monroe's damages because "[Monroe's] employment decisions were
not reasonable, aggravated his condition and therefore [his damages] are not proximately caused by the ... accident." We
disagree. At the time of the accident, Monroe was a healthy, active, athletic nineteen-year-old, who was looking for a job to
help him pay for college. After the accident, the doctor told Monroe to rest and not exert himself for a few days. Monroe
followed that advice, and did not start work until two weeks after his doctor visit and more than a month after the accident.
Monroe grew up on a ranch, had done manual labor all his life, and the record contains nothing to suggest he was not fully
capable of doing the work at the feed store and later at the bars. And, although the pain in Monroe's ribs and back was
exacerbated by some of the work, he was able to perform his job duties. None of the doctors Monroe has seen has put him
on any work restrictions, and there is nothing in the record to suggest that he has not followed his doctor's instructions.
Under these circumstances, Monroe's job choices were not unreasonable. We therefore conclude the evidence is sufficient
to permit a reasonable and fair-minded person to find that the accident proximately caused Monroe's injury and all his
subsequent treatments; see City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005); and this finding is not so against the
great weight and preponderance of the evidence as to be manifestly unjust. See In re King's Estate, 150 Tex. 662, 244
S.W.2d 660, 661 (1951).

 3. Ake next argues "[t]he trial court erred in its award ... in regard to mental anguish[] because there was legally and
factually insufficient evidence of mental anguish." However, the trial court awarded Monroe damages of $31,520 in a lump
sum for both past physical pain and past mental anguish. Ake did not draw the trial court's attention to his complaint that
there was insufficient evidence to support an award of mental anguish damages either before the judgment in his closing or
a request for a separate damages finding or after the judgment in a motion for new trial or a request for findings of fact.
Under these circumstances, Ake is limited to challenging the sufficiency of the evidence supporting the damage award as a
whole. See Thomas v. Oldham, 895 S.W.2d 352, 359-60 (Tex. 1995) (holding that defendant who did not object to
broad-form submission of five elements of damage could not challenge the sufficiency of the evidence to support one of the
elements and was limited to challenging the sufficiency of the evidence supporting the whole verdict); Tagle v. Galvan, 155
S.W.3d 510, 514-16 (Tex. App.-San Antonio 2004, no pet.) (applying Thomas in a case tried to the bench and holding that
defendant who failed to "specifically draw the trial court's attention to any complaint that one of the elements of damages
included in its broad-form finding was unsupported by the evidence" was limited to challenging the sufficiency of the
evidence supporting the damage award as a whole.); cf. Harris County v. Smith, 96 S.W.3d 230, 232 (Tex. 2002) (holding
that defendant who made a timely and specific objection in the trial court, pointing out the particular elements of damage
that had no support, could challenge the sufficiency of the evidence to support those elements on appeal and distinguishing
Thomas on that ground). Because Ake does not argue that the evidence, considered as a whole, is insufficient to support the
$31,520 award for past physical pain and mental anguish, we reject Ake's sufficiency challenge regarding Monroe's
damages. See Thomas, 895 S.W.2d at 360.

 The trial court's judgment is affirmed.



 Sarah B. Duncan , Justice

1. Although Ake sought only a thirty-day continuance, it is undisputed that the first available jury trial setting was at least
three months later, in either late October or early November.