In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-409 CV


____________________



ANTONIO J. VILLASAN, M.D., Appellant



V.



WILLIAM O'ROURKE, INDIVIDUALLY; LAURA O'ROURKE,


INDIVIDUALLY; AND LAURA O'ROURKE,


AS NEXT FRIEND OF BROCK O'ROURKE, Appellees






On Appeal from the 172nd District Court


Jefferson County, Texas


Trial Cause No. E171154






 MEMORANDUM TO CLERK 



 You are directed to make the following correction in the Opinion dated May 26, 2005:


 On Page 6, Footnote 1, the second sentence, "§§ 101.001-1.09" should be changed to
read "§§ 101.001-.109."

 On Page 14, first full paragraph, last sentence, "§ 1.00301.021" should be changed
to read "§ 1.002."

 You will give notice of this correction in the original Opinion by sending a copy of
the corrected page accompanied by this memorandum to all interested parties who received
a copy of the original Opinion.

 Entered this the 14th day of June, 2005.

 PER CURIAM















In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-409 CV


____________________



ANTONIO J. VILLASAN, M.D., Appellant



V.



WILLIAM O'ROURKE, INDIVIDUALLY; LAURA O'ROURKE, 


INDIVIDUALLY; AND LAURA O'ROURKE, 


AS NEXT FRIEND OF BROCK O'ROURKE, Appellees






On Appeal from the 172nd District Court


Jefferson County, Texas


Trial Cause No. E171154






 OPINION


 This is a case of first impression and requires that we interpret the amended provisions
of section 101.106(e) of the Texas Civil Practice and Remedies Code enacted as a part of the
Legislature's tort reform efforts in 2003. See Tex. Civ. Prac. & Rem. Code Ann.
§101.106(e) (Vernon Supp. 2005). Section 101.106(e) provides in suits where both the
governmental unit and its employee are sued, the suit against the employee immediately be
dismissed on motion of the governmental unit. The ultimate issue is whether the trial court
erred in denying Dr. Antonio Villasan's motions requesting his dismissal from a suit filed by
William O'Rourke and other family members against Dr. Villasan and the University of
Texas Medical Branch, Galveston ("UTMB"). Subsidiary to that issue are questions of
whether the trial judge had a mandatory duty to dismiss Dr. Villasan pursuant to section
101.106(e) based on the government's filing of a motion to do so, and whether the
amendments to section 101.106 apply despite a federal court suit filed by the O'Rourkes
prior to the effective date of the amended provisions. Answering the two subsidiary
questions in the affirmative leads us to conclude the trial court erred in failing to grant Dr.
Villasan's motion to dismiss the claim against him, and accordingly, we reverse and dismiss.

Procedural History


 The O'Rourkes sued UTMB and Dr. Villasan, its employee, on September 22, 2003
in state court in Jefferson County, Texas. The O'Rourkes complain that Dr. Villasan
negligently failed to diagnose William O'Rourke's cancer during a period when he received
medical treatment while incarcerated at F.C.C. Beaumont Camp, a federal prison operated
by the Federal Bureau of Prisons. 

 On February 17, 2004, UTMB filed a motion to dismiss and sever based on Civil
Practice and Remedies Code section 101.106(e) that provides, "If a suit is filed under this
chapter against both a governmental unit and any of its employees, the employees shall
immediately be dismissed on the filing of a motion by the governmental unit." Tex. Civ.
Prac. & Rem. Code Ann. §101.106(e) (Vernon Supp. 2005). The O'Rourkes responded to
UTMB's motion by filing their First Amended Original Petition, omitting UTMB as a party,
and leaving Dr. Villasan as the sole defendant.

 Subsequently, on May 17, 2004, Dr. Villasan filed a motion to dismiss, arguing that
because he was an employee of UTMB and because UTMB filed a motion to dismiss, the
trial court had a mandatory duty to dismiss him. On June 28, 2004, Dr. Villasan filed an
amended request to dismiss and alternatively, a motion for summary judgment, re-asserting
that section 101.106(e) mandated the trial court's dismissal of the O'Rourkes' claims. The
O'Rourkes responded to Dr. Villasan's amended motion, arguing that: (1) Dr. Villasan's
motion was moot because they dismissed UTMB; (2) Dr. Villasan could not rely on the
statute entitling the government to have suits against its employees dismissed; (3) section
101.106(e) of the Texas Civil Practice and Remedies Code (hereinafter "Code") violated
Article I, Section 13, referred to as the open courts provision of the Texas Constitution; and
(4) their prior suit against Dr. Villasan for negligence in federal court filed on May 29, 2003
made the amendments to section 101.106(e) inapplicable to their state suit filed on September
22, 2003. As evidence of the federal suit, the O'Rourkes attached a copy of the first page of
the complaint filed in federal court. 

 On August 30, 2004, the O'Rourkes filed their Second Amended Original Petition,
but made no material changes in any of their negligence allegations. On that same date, the
trial court conducted a hearing and orally announced that it intended to deny the relief
requested by Dr. Villasan. On September 9, 2004, the trial court entered its written order
denying Dr. Villasan's requested dismissal and request for summary judgment, without
entering findings of fact or conclusions of law. 

 Statutory History and Construction 


 Because it is relevant to the resolution of the questions presented, we set out the full
text of Code section 101.106 under which Dr. Villasan asserts a right to have the claims
against him dismissed:

 § 101.106. Election of Remedies

 (a) The filing of a suit under this chapter against a governmental unit
constitutes an irrevocable election by the plaintiff and immediately and forever
bars any suit or recovery by the plaintiff against any individual employee of
the governmental unit regarding the same subject matter.


 (b) The filing of a suit against any employee of a governmental unit constitutes
an irrevocable election by the plaintiff and immediately and forever bars any
suit or recovery by the plaintiff against the governmental unit regarding the
same subject matter unless the governmental unit consents.


 (c) The settlement of a claim arising under this chapter shall immediately and
forever bar the claimant from any suit against or recovery from any employee
of the same governmental unit regarding the same subject matter.


 (d) A judgment against an employee of a governmental unit shall immediately
and forever bar the party obtaining the judgment from any suit against or
recovery from the governmental unit.


(e) If a suit is filed under this chapter against both a governmental unit and any of its
employees, the employees shall immediately be dismissed on the filing of a motion by the
governmental unit.


 (f) If a suit is filed against an employee of a governmental unit based on
conduct within the general scope of that employee's employment and if it
could have been brought under this chapter against the governmental unit, the
suit is considered to be against the employee in the employee's official
capacity only. On the employee's motion, the suit against the employee shall
be dismissed unless the plaintiff files amended pleadings dismissing the
employee and naming the governmental unit as defendant on or before the
30th day after the date the motion is filed.


Tex. Civ. Prac. & Rem. Code Ann. § 101.106 (Vernon Supp. 2005).


 Revisions to this Code section in 2003 were part of a comprehensive effort by the
Legislature to reform the tort system in Texas and part of a bill commonly referred to as
House Bill Four. With respect to litigation against governmental entities, the revisions seek
to simplify litigation by advancing to the filing of the original petition the plaintiff's final
decision regarding whether the government official acted in the general scope of
employment, rather than allowing plaintiffs to pursue alternative theories regarding the
official's employment status through the trial. The statute allows the governmental employee
whose conduct is alleged to have been within the scope of employment to force the plaintiff
to amend the suit and name the governmental entity as the sole defendant. Tex. Civ. Prac. 


& Rem. Code Ann. § 101.106(f). The statute allows the government, when both the
government and the employee are sued, to force the plaintiff to drop the employee from the
suit. Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e). All of these provisions, together,
create a procedural right. At the election of the government or its employee, the respective
defendant may force the plaintiff to proceed in Texas Tort Claims Act ("TTCA") (1) suits
against the governmental entity alone in three possible circumstances: (1) when the suit is
initially filed against the governmental agency alone; (2) when the suit is initially filed
against both governmental agency and its employees; and (3)when the suit is initially filed
against the government employee when the employee's conduct is alleged to have been
within his scope of employment. Id. at § 101.106.

 By filing an amended petition dropping UTMB as a defendant and leaving Dr.
Villasan as the sole defendant, the O'Rourkes attempt to avoid the clear intent of the statute. 
We hold that under Code section 101.106, the governmental agency perfects the statutory
right to a dismissal of its employee upon the filing of a motion to dismiss, and the employee
may subsequently rely on the duty created by the motion to require the trial judge to dismiss
the claims against him. Subsequent amended pleadings by the plaintiff filed after the
government's filing of its motion to dismiss the employee do not moot the right created by
the filing of the motion under section 101.106.

 The O'Rourkes argue that their amended petition filed after the government filed its
motion to dismiss, but prior to the hearing on the motion, effectively dismissed the
governmental entity as of the date it was filed, and, therefore, the parties are in the position
they would have been in if the original petition had never been filed. Among other cases,
they cite as authority for this argument Chamberlain v. McReight, 713 S.W.2d 372, 374 (Tex.
Civ. App.--Beaumont 1986, writ ref'd n.r.e.). Chamberlain began as a suit against an oil
company and its owner, and, by amended petition, the plaintiff omitted the owner. The
analysis in Chamberlain relies on Rule 65 of the Texas Rules of Civil Procedure promulgated
by the Texas Supreme Court, and not a legislatively created statutory right. As a result,
Chamberlain, which cites Rule 65, and the other cases cited by the O'Rourkes relying on
either Rule 65 or Rule 162 (Dismissal or Non-suit) are distinguishable. None of the cases
cited by the O'Rourkes involve a statutory right of dismissal created by the Legislature.

 Application of the Code Construction Act to section 101.106 reinforces our
conclusion that we have properly interpreted this statute. When the Legislature in a statute
uses the word "shall," the Code Construction Act indicates that a duty is imposed. Tex.
Gov't Code Ann. § 311.016(2) (Vernon 2005). Section 101.106 (e) provides that "the
employees shall immediately be dismissed on the filing of a motion by the governmental
unit." It follows, then, that at the moment UTMB filed a motion to dismiss a TTCA claim
filed against both UTMB and its employee, a duty arose for the trial court to dismiss the
claim against the government employee. 

 Our conclusion that a right attaches upon the government's filing of its motion follows
from the fact that section 101.106 makes the consequences of the plaintiffs' choice in suing
the governmental unit and its employee irrevocable. Tex Civ. Prac. & Rem. Code Ann. §
101.106(a). The term "irrevocable" is not defined by the statute, and is therefore construed
according to the rules of grammar and common usage. Tex. Gov't Code Ann. § 311.011(a)
(Vernon 2005). "Irrevocable" is defined as "incapable of being recalled, or revoked : past
recall : unalterable." Webster's Third New International Dictionary 1196 (1986). 
The Legislature did not create any exceptions in section 101.106 allowing TTCA claimants
a second election to choose the parties against whom they desired to lodge their suit. The
language in the statute is crystal clear and not ambiguous.

 The O'Rourkes request that we construe the statute to allow TTCA claimants two
elections to determine against whom to proceed. We consider their request in light of the
enactment of a comprehensive statute wherein the Legislature specifically dealt with each
possible option regarding the parties to a TTCA suit: (1) when suit is filed against the
governmental unit, suit or recovery against the individual employee regarding the same
subject matter is barred by Code section 101.106(a); (2) when suit is filed against the
government employee, suit or recovery by the plaintiff against the governmental unit
regarding the same subject matter is barred absent consent of the governmental unit by Code
section 101.106(b); and (3) when suit is filed against both employee and governmental unit,
suit against the employee shall immediately be dismissed on the governmental unit's filing
of a motion to dismiss under Code section 101.106(e). Under this statute, when TTCA
claimants elect to include the governmental unit as a party to a suit, whether alone or in
conjunction with a governmental employee, TTCA claimants have made an irrevocable
election of remedies that they will look solely to the governmental unit for compensation for
injury. Tex. Civ. Prac. & Rem. Code Ann. §101.106(a).

 By forcing TTCA claimants to make an election on the filing of the suit, the
Legislature encumbered plaintiffs' abilities under the Tort Claims Act to pursue, through
trial, alternative theories at the same time -- namely, that either the government employee
acted within the scope of his authority, but in the alternative, and if not, then the
governmental employee is individually liable. The Legislature's apparent goal of reducing
cost is enhanced by the amended statutory provisions because they narrow the issues for trial,
thereby reducing the delay and expense otherwise associated with discovery related to
theories no longer relevant in light of the election made by claimants on their initial filing of
suit. 


 To place the statutory provision in context, we note that an injured claimant's ability
to recover against the government, or its employees, in a personal injury or property damage
case is limited by the doctrines of sovereign immunity and official immunity. Univ. of Tex. 
Med. Branch at Galveston v. York, 871 S.W.2d 175, 179 (Tex. 1994) (governmental
immunity protected UTMB from liability for its physician's failure to diagnose a broken hip);
Texas Dep't of Criminal Justice v. Miller, 51 S.W.3d 583, 585 (Tex. 2001) (Department of
Criminal Justice shielded by sovereign immunity for its physician's failure to diagnose fatal
meningitis); Murk v. Scheele, 120 S.W.3d 865, 866 (Tex. 2003) (University of Texas Health
Science Center's employee, a neurosurgeon, entitled to immunity for allegedly delaying
spinal decompression surgery). The Texas Legislature, in enacting the Texas Tort Claims
Act waived sovereign immunity "only to a limited degree." Dallas County Mental Health
v. Bossley, 968 S.W.2d 339, 343 (Tex. 1998).

 Official immunity, as contrasted with sovereign immunity that protects the
government agency, may protect individual governmental employees from liability. DeWitt
v. Harris County, 904 S.W.2d 650, 653 (Tex. 1995); Kassen v. Hatley, 887 S.W.2d 4, 8 (Tex.
1994). "Government employees are entitled to official immunity from suit arising from the
performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting
within the scope of their authority." City of Lancaster v. Chambers, 883 S.W.2d 650, 653
(Tex. 1994). "The purpose of official immunity is to insulate the functioning of government
from the harassment of litigation, not to protect erring officials." Kassen, 887 S.W.2d at 8
(citing Westfall v. Erwin, 484 U.S. 292, 295, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988)).
"Common law official immunity is based on the necessity of public officials to act in the
public interest with confidence and without the hesitation that could arise from having their
judgment continually questioned by extended litigation." Ballantyne v. Champion Builders,
Inc., 144 S.W.3d 417, 424 (Tex. 2004).

 With respect to medical decisions made by employees of governmental agencies, it
appears that a TTCA claimant's initial choice as to the proper parties may be a crucial
decision because it is irrevocable. Official immunity does not necessarily extend to any and
all medical decisions made by medical professionals employed by governmental agencies. 
Kassen, 887 S.W.2d at 11-12 (government-employed physicians may not be immune from
tort liability arising from their negligent exercise of medical discretion). 

 Since the remedy is affected by the TTCA claimant's initial decision regarding who
should be made a party in a TTCA suit under the amended provisions of section 101.106, the
initial irrevocable decision in a suit involving government-employed medical professionals
is critical. If the complaint alleges the government-employed medical professional 
negligently exercised medical discretion, and does not fall within the limited waiver of
immunity under the TTCA, it appears that under section 101.106 the complaint should be
made against the medical professional alone, and not the governmental agency. Before filing
suit, a claimant considering a TTCA claim must carefully consider whether to allege that the
medical decision in such a circumstance was made within the scope of the government
employee's authority. This is because, in general, a governmental agency is immune from
medical negligence complaints, unless the complaint falls within the limited waiver
provisions of the TTCA. See Miller, 51 S.W.3d at 587. Given the fact that an election is
forced by section 101.106 at the time a TTCA claimant files suit, and the fact that the initial
decision is irrevocable, the initial decision may determine the claimant's ultimate success or
failure. 

 Section 101.106, as amended, assumes that when the government agency is sued
alone, or is sued together with the government's employees, the theory of recovery will fall
within the provisions of the TTCA making the government employees unnecessary parties
to the suit. Section 101.106 creates a procedure in such situations to allow government
employees sued under these circumstances to quickly and easily obtain their removal as
parties from these suits. 

 Because Section 101.106 preserves injured claimants' rights to obtain a remedy under
the limited circumstances where the TTCA waives immunity and does not prohibit common
law claims that are not subject to official immunity defenses, the Code's election of remedies
provisions neither enlarge nor constrict the potential recovery of claimants injured by actions
of government employees. While electing to bring a TTCA claim rather than a common law
medical negligence claim may have consequences due to the Legislature's policy decision
to make the decision irrevocable, elections of remedies among competing compensation
schemes for injured claimants are not unknown to Texas law. For example, injured parties
may elect to proceed as compensation claimants under the Worker's Compensation Act, but
in so doing waive their rights to proceed at common law. For that reason, in Medina v.
Herrera, 927 S.W.2d 597, 598-599 (Tex. 1996), the Texas Supreme Court held that an
employee's intentional tort claim against his employer was barred as a matter of law by his
election of a worker's compensation remedy. 

 The Legislature is empowered to define when, and under what terms, it desires to waive 
sovereign immunity from common law claims. See Texas Natural Resource Conservation
Comm'n v. IT-Davy, 74 S.W.3d 849 (Tex. 2002). Injured claimants may still opt to proceed on
viable common law claims against individual governmental employees, as common law claims
are not proscribed by the amended statutory provisions of section 101.106. If claimants choose
to pursue common law claims against government employees, they are opting out of their TTCA
remedy. 

 In the trial court, and on appeal, all of the evidence showed that Dr. Villasan was an
employee of UTMB. By suing both UTMB and Dr. Villasan, the O'Rourkes elected to prove
in their case that Dr. Villasan's medical decision was within the scope of his employment with
UTMB. In order to recover for the actions of an official in the scope of his duties, claimants in
a TTCA suit in which they join the governmental agency must prove allegations that come
within the limited waiver of immunity provided by the Act. Tex. Civ. Prac. & Rem. Code
Ann.§ 101.021 (limiting the liability of a governmental unit from the negligent conduct of an
employee to injuries arising from the operation or use of a motor-driven vehicle, or to injuries
caused by the condition or use of tangible personal or real property.) The O'Rourkes sued both
UTMB and Dr. Villasan when they filed their initial state court pleading. After filing an answer,
UTMB filed a motion to dismiss Dr. Villasan, a procedural right created by section 101.106(e). 
This provision, on the filing of the motion, created a mandatory duty on the part of the trial court
to dismiss the claims against Dr. Villasan.

 While the O'Rourkes essentially argue that Rule 65 trumps section 101.106 to allow their
dismissal of UTMB without affecting their suit against Dr. Villasan, that argument fails. As
mandated by the Civil Practice and Remedies Code, we apply the Code Construction Act to
determine the impact of section 101.106. Tex. Civ. Prac. & Rem. Code Ann. § 1.002 (Vernon
2002). 

 Section 311.026 of the Code Construction Act provides that when a general provision
conflicts with a special provision, both provisions shall be construed, if possible, to give effect
to both; but, if the conflict is irreconcilable, the special provision prevails absent exceptions not
pertinent in this case. Tex. Gov't Code Ann. § 311.026 (Vernon 2005). The O'Rourkes'
amended petition was filed pursuant to Rule 65 of the Rules of Civil Procedure, and Rule 65 is
a general rule dealing with the consequences of amended pleadings. Rule 65 is not a specific
rule addressing the consequences of filing amended pleadings under the TTCA. 

 Second, to the extent the Rules of Civil Procedure conflict with a statute, "the statute
prevails unless the rule has been passed subsequent to the statute and repeals the statute as
provided by Texas Government Code section 22.004." Johnstone v. State, 22 S.W.3d 408, 409
(Tex. 2000). When a procedural "rule of the court conflicts with a legislative enactment, the
rule must yield." Few v. Charter Oak Fire Ins. Co., 463 S.W.2d 424, 425 (Tex. 1971). There
is a conflict between Rule 65, which states "the instrument for which it [the amended pleading]
is substituted shall no longer be regarded as a part of the pleading in the record of the cause,"
and Code section 101.106, a recently amended statute, that makes the filing of an initial pleading
irrevocable. Further, the conflict between the rule and the statute is irreconcilable because an
irrevocable pleading cannot be changed or altered while the essential purpose of an amendment
under Rule 65 is to allow alterations to prior pleadings. 

 Finally, in general, when applying rules of statutory construction the more recent
enactment prevails. Since the amended provisions of section 101.106 were enacted more
recently than the provisions of Rule 65, section 101.106 prevails over the rule. See Johnstone,
22 S.W.3d at 409. 

 In summary, section 101.106 is more specific than Rule 65 as applied to TTCA claims. 
Section 101.106 is a statute, whereas Rule 65 is not. Section 101.106 is the more recent
provision between the competing provisions that the parties argue apply. Applying the rules of
statutory construction guiding our resolution of the issue, we conclude that the O'Rourkes'
amendments of their pleadings, although permitted by the Texas Rules of Procedure, do not
trump a statutory right of dismissal that vested upon the government's filing its motion to
dismiss the claims against its employee. 

 Under the pleading procedures governing this case, as modified by the Civil Practice and
Remedies Code, the Legislature gave the O'Rourkes only one election to determine whether
they wanted to proceed under a TTCA theory or under other potential theories. They elected
to proceed under a TTCA theory. The statutes governing TTCA suits make the trial judge's
responsibility to dismiss the government's employee mandatory when the government files a
motion requesting that the claims against its employee be dismissed. The trial judge's duty
under these circumstances is not optional. We reject the O'Rourkes' contention that Dr.
Villasan did not have standing to complain about the trial judge's violation of a mandatory duty
to dismiss him from the suit.

Construction of Enabling Language 


 Alternatively, the O'Rourkes argue that their suit in federal court, filed prior to the
effective date of the amendment to the Texas Civil Practice and Remedies Code, avoids the
application of the amended provisions of Code section 101.106 to their state suit. We set out
the enabling language of Code section 101.106, which provides:

 Except as otherwise provided in this section or by a specific provision in
an article, this Act applies only to an action filed on or after the effective date of
this Act. An action filed before the effective date of this Act, including an action
filed before that date in which a party is joined or designated after that date, is
governed by the law in effect immediately before the change in law made by this
Act, and that law is continued in effect for that purpose.


Act of June 2, 2003, 78th Leg., ch. 204, § 23.02(d), 2003 Tex. Gen. Laws 847, 899. 


 Clearly, the suit filed in state court by the O'Rourkes on September 22, 2003 is an
"action" contemplated by the Legislature in enacting the statute, and the state suit was filed after
the date the amended provisions went into effect on September 1, 2003. However, prior to filing
suit in state court, the O'Rourkes filed a suit in federal court on May 29, 2003 against the United
States of America, The University of Texas Medical Branch, Galveston, Beth Serrano, M.D.,
Robert Leland Hardy, D.O., Antonio Villasan, M.D., and E. Barby, P.A. The only evidence in
the trial court's record regarding the federal suit was the first page of the complaint. From the
federal complaint, we can determine that this action was a Federal Tort Claims Act case brought
under Title 28, section 1346(b) of the United States Code, that there is an identity of plaintiffs
between the O'Rourke's federal action and the O'Rourke's state action, and that there are
defendants in the federal action that are not included in the state action. From the first page of
the federal complaint, we cannot determine: (1) the nature of the complaints against the
defendants beyond the fact that the O'Rourkes asserted a claim under the Federal Tort Claims
Act; (2) the date their claims arose; or (3) whether their claims in the federal suit involve the
same subject matter as those they asserted in the state action. Although as an appendix to their
brief the O'Rourkes attached a copy of the federal court's order dismissing their suit from
federal court, and additional information concerning the subject matter of their federal suit is
available therein, the order was not before the trial court and we therefore cannot consider it. 
See Carlton v. Trinity Univ. Ins. Co., 32 S.W.3d 454, 458 (Tex. App.--Houston [14th Dist.]
2000, pet. denied). 

 The term "action" is not defined by the statute. Dr. Villasan argues that the federal and
state suits are not the same actions. Dr. Villasan argues that the term "action" means "suit." Dr.
Villasan contends that since the state suit was filed after the effective date of section 101.106,
and because the state suit is separate and distinct from the federal suit, the amended provisions
of section 101.106(3) apply to the later filed state suit. Dr. Villasan cites Thomas v. Oldham,
895 S.W.2d 352 (Tex. 1995). In Thomas, the Texas Supreme Court analyzed the meaning of
the word "action" in connection with a prior version of section 101.106, and stated that the
"term 'action' is generally synonymous with 'suit,' which is a demand of one's rights in court." 
Thomas, 895 S.W.2d at 356; see also Bradley v. Etessam, 703 S.W.2d 237, 241 (Tex. App.--Dallas 1985, writ ref'd n.r.e.) (action in section 10.01 [of article 4590i] means "suit."); United
Production Corp. v. Hughes, 127 Tex. 21, 152 S.W.2d 327, 330 (1941) (using "suit" and
"action" synonymously). 

 The O'Rourkes, on the other hand, argue that they filed an "action" against Dr. Villasan
before September 1, 2003, and that the term "action" is not confined to a specific suit. The
O'Rourkes cite Bates v. Tesar, 81 S.W.3d 411, 428 (Tex. App.--El Paso 2002, no pet.) for the
proposition that "[t]he Legislature's adoption of . . . general savings provisions indicates a
general legislative policy that the repeal or amendment of any statute shall not affect the prior
operation of the statute nor extinguish any liability incurred or affect any right accrued or claim
arising before the repeal or amendment takes effect." They argue that their action need only
involve the same subject matter to relate back and avoid the revisions to section 101.106. The
O'Rourkes assert that the savings provision enacted by the Legislature with section 101.106
avoids an ex post facto application of the election of remedies provisions of the statute to this
case. The O'Rourkes, however, cite no cases holding that the Legislature intended general
savings provisions such as that enacted with section 101.106 to operate in a manner to allow
separately filed suits to relate back to earlier filed suits and thereby avoid the application of
statutory amendments.

 In analyzing the savings provision of section 101.106, we look to the common meaning
of the term "action," as required by section 311.011 of the Code Construction Act. The Black's
Law Dictionary definition of "action" states "The term [action] in its usual legal sense means
a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law." 
Black's Law Dictionary 28 (6th ed. 1990). "Action" is defined in Webster's Dictionary as
"a deliberative or authorized proceeding." Webster's Third New International
Dictionary 21 (1986). Based upon the common usage of "action" as reflected by Black's,
Webster's and prior opinions, we agree that "action" as it is commonly used in the context of
a savings provision means "suit." Since the federal suit is a separate proceeding from the state
suit, it follows that it is not the same action. 

 We perceive the question of whether both a federal and state suit assert the same causes
of action as being different from the question of whether they are the same action. They are
clearly different actions in the sense they are filed in separate jurisdictions. 

 The parties bring no statutes to our attention wherein the Legislature expresses an intent
to "save" a later filed state suit from the application of an amended statute by virtue of the earlier
filing of a federal suit, and we have found none. Since the state suit is "an action" filed after
September 1, 2003, and because we find no specific provision allowing the state suit to relate
back to an earlier filed federal suit for purposes of saving the state suit from the amended
provisions of this statute, we hold the amended provisions of section 101.106 apply to the state
suit filed after the amended provisions went into effect.

Trial Record 


 A separate and alternative basis to hold that the federal filing does not avoid the
application of the amended provisions of the statute exists on the trial court's record. Even if
we were to accept the O'Rourkes' argument that the savings provision of section 101.106 should
be interpreted to allow a relation back doctrine to operate, a proposition that we have rejected,
the O'Rourkes recognize in their brief that for such a doctrine to apply both the federal and state
suits must involve the same subject matter. In the trial court the O'Rourkes failed to establish
an identity between the subject matter of the federal suit and that of the state suit. From the first
page of their federal petition, which is all the evidence regarding the subject matter of the federal
suit before the judge in the state case, we cannot determine that the subject matter of the claims
asserted in the federal suit are the same as those the O'Rourkes assert in state court.

 Even if we were to accept the argument that a relation back doctrine should be created
in these circumstances, it would be the claimants' burden to plead and to produce evidence to
show that the doctrine applies. See Willis v. Maverick, 760 S.W.2d 642, 647 (Tex. 1988)
(burden on plaintiff to plead and prove exceptions to application of statute of limitation); Weaver
v. Witt, 561 S.W.2d 792, 794 n. 2 (Tex.1977) (suspending operation of a statute of limitations
is the burden of the party pleading suspension); Wise v. Anderson, 163 Tex. 608, 359 S.W.2d
876, 880-81 (1962) (burden of pleading and proving that defendant was absent from state to
avoid limitations is on the plaintiff). Thus, even if a relation back doctrine applies, because the
evidence in the trial court fails to show an identity between the subject matter of the suit in
federal court and the suit in state court, the trial judge erred in denying Dr. Villasan's motion
to dismiss.

Application of Amended Statute Not Prohibited


 Our interpretation of the savings provision does not create a prohibited retroactive
application of law. The amended provisions of section 101.106 apply to "an action filed" on or
after September 1, 2003, and do not affect actions filed prior to September 1, 2003. The
amendments operate prospectively on suits filed after the amendments, and do not annul or
affect prior filings. 

 We generally presume that the Legislature intends an amendment to operate
prospectively and not retroactively. Subaru of America, Inc. v. David McDavid Nissan, Inc.,
84 S.W.3d 212, 219 (Tex. 2002). However, this general rule is inapplicable where the
amendment is procedural or remedial. Id. As explained above, the election of remedies aspect
of the amended section 101.106 does not enlarge or diminish the potential recovery of a
claimant entitled to recover under the TTCA. Because the amendments do not change the
amount of recovery or the right to recover, the amendment is procedural. See generally
Blonstein v. Blonstein, 831 S.W.2d 468, 472 (Tex. App.--Houston [14th Dist.] 1992, writ
denied) ("A procedural amendment is one which effects the manner in which a suit is conducted
with application to pleading, evidence, etc. Procedure involves every step in a trial or appeal.
. . . Substantive law on the other hand, relates to the rules and principles which fix and declare
the primary rights of individuals and provides the type of remedy available in case of invasion
of those rights." [citations omitted]) The amendments are also remedial, given the Legislature's
intent to simplify litigation against governmental entities under the TTCA. "A remedial matter
pertains to the practice and procedure by which substantive law is made effective." Id. 
Therefore, the general rule proscribing the retroactive application of amendments of statutes do
not apply to the type of amendments made to section 101.106.

 Moreover, "[a] retroactive application of a statute only violates our Constitution if, when
applied, it takes away or impairs vested rights acquired under existing law." Subaru, 84 S.W.
3d at 219. The amendments to section 101.106 of the TTCA do not impair vested property
rights, because at common law the government was immune from suit. Claimants' rights to
recover for injuries by government employees for actions in the scope of their employment are
allowed by virtue of the sovereign's waiver of immunity under the TTCA. See City of Tyler v.
Likes, 962 S.W.2d 489, 494 (Tex. 1997) ("it is important to remember that the Tort Claims Act
does not create a cause of action; it merely waives sovereign immunity as a bar to a suit that
would otherwise exist.") As such, the "rights" are purely statutory. 

 In general, persons do not have a vested right in the continuance of present law in
relation to a particular subject; the Legislature may change laws so long as they do not destroy
or prevent the adequate enforcement of vested rights. See Subaru, 84 S.W.3d at 219. In City
of Dallas v. Trammell, 129 Tex. 150, 101 S.W.2d 1009 (1937), the Texas Supreme Court
explained that a statutory right created to receive payments from a state pension plan was
subordinate to the right of the Legislature to completely abolish or reduce payments under the
plan. See 101 S.W.2d at 1013. This rule, that the government may change rules that have not
vested in statutorily created government benefits plans, remains a viable doctrine. Reames v.
Police Officers' Pension Bd. of City of Houston, 928 S.W.2d 628, 632 (Tex. App.--Houston
[14th Dist.] 1996, no writ). 

 On the date the statute went into effect, September 1, 2003, the O'Rourkes had the right
to sue either Dr. Villasan or UTMB and to assert claims either at common law or under the
TTCA. Therefore, the amended statute is not retroactive in the sense that it prohibited or barred
prior claims by virtue of its enactment. Even if it arguably affected TTCA claimants' options
of proceeding against both the government entity and the government entity's employee and
asserting alternative theories of recovery, we see no reason to treat procedural provisions under
the TTCA differently from procedural rules under government pension plans regarding whether
such procedural rules create vested rights. 

 In summary, the O'Rourkes' options with respect to procedurally posturing their case
under the pre-amended statutory scheme of the TTCA were not vested rights. Because they had
no vested right in a statutory procedure under the pre-amended version of the TTCA to proceed
against both Dr. Villasan and UTMB, it follows that the Legislature could amend and alter the
procedures under section 101.106 without running afoul of Article I, section 16 of the Texas
Constitution. 

No Open Courts Violation


 The O'Rourkes also contend that the amendments to section101.106, if applied to their
state suit against Dr. Villasan, violate the open courts guarantee of the Texas Constitution. That
guarantee provides, ". . . All courts shall be open, and every person for an injury done him, in
his lands, goods, person or reputation, shall have remedy by due course of law." Tex. Const.
art. I, § 13. Because the provision affects common law claims, and not statutory claims, the
provision does not apply to the TTCA. In Thomas, the Texas Supreme Court explained: 

 The Tort Claims Act broadened, rather than restricted, an injured party's
remedies. At common law, municipalities performing governmental functions
were completely immune from liability. The Tort Claims Act created a limited
waiver of that immunity. Although a plaintiff who pursues the statutory remedy
against the government may lose his or her common law remedy against the
employee, the plaintiff is not required to follow this course. He or she may still
opt to pursue the full common law remedy against the responsible employee,
foregoing or postponing any attempt to recover from the government. Section
101.106 thus does not violate the Texas Constitution.


Thomas, 895 S.W.2d at 357-58. The Thomas Court rejected a claimant's challenge under the
open courts provision to an earlier version of section 101.106 because Article I, section 13 of
the Texas Constitution prohibits only the Legislature's limiting common law causes of action,
and a TTCA claim did not exist at common law. Id. For the same reasons, the O'Rourkes' open
courts argument under amended Code section 101.106 fails. 

No Waiver


 Finally, the O'Rourkes invite us to affirm the trial court's decision because "the party
challenging the denial [of Dr. Villasan's motion to dismiss] has failed to challenge an alternate
ground for the court's ruling." They argue that because their open courts argument was urged
in the trial court as a ground to deny Dr. Villasan's motion to dismiss, and was not challenged
in the trial court, we are required to affirm the ruling of the trial court. As authority for this
proposition, they cite Stephens v. Dolcefino, 126 S.W.3d 120, 130 (Tex. App.--Houston [1st
Dist.] 2003, pet. filed). However, our review of Stephens reveals that it stands for the
proposition that an appellate court can find that a party, on appeal, waived an issue by
inadequately briefing the issue. Stephens does not stand for the proposition that a waiver occurs
where a response to a summary judgment or motion to dismiss contains arguments to which the
other side fails to object. Id. 

 Dr. Villasan, on appeal, adequately briefed why the open courts provision is not
applicable to a TTCA case. We decline the invitation to create a rule that a summary judgment
movant must file an objection to a summary judgment response in order to preserve the issue
for appeal.

Conclusion


 In conclusion, we sustain Dr. Villasan's first issue, and hold that he was entitled to
dismissal as a matter of law under the provisions of section 101.106(e) of the Texas Civil
Practice and Remedies Code. We reverse the trial court's order denying Dr. Villasan's motion
to dismiss and render judgment dismissing the claims against Dr. Villasan.

 REVERSED AND RENDERED. 

 _____________________________

 HOLLIS HORTON

 Justice


Submitted on April 14, 2005

Opinion Delivered May 26, 2005

Before McKeithen, C.J., Gaultney and Horton, JJ.



1. Section 101.106 is part of the Texas Tort Claims Act. See Tex. Civ. Prac.& Rem.
Code Ann. §§ 101.001-.109 (Vernon 1997 & Supp. 2005).